UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:25 CV 729 JMB |
| SEAN PATRICK DOUGHERTY and AMBER DAVIS, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM and ORDER**

Now pending before the Court is Plaintiff State Farm Fire & Casualty Company's Motion for Judgment on the Pleadings (Doc. 45). No Defendant has filed a response. For the reasons set forth below, the Motion is **GRANTED**.

**Standard**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate when there are no issues of material fact and the moving party is entitled to judgment as a matter of law. Fiecke-Stifter v. MidCountry Bank, 170 F.4th 1120, 1124 (8th Cir. 2026). "When evaluating a motion for judgment on the pleadings, a court must accept as true all factual allegations set out in the complaint, and must construe the complaint in the light most favorable to the plaintiff, drawing all inferences in his favor." Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006); Ashley County Ark. V. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009) (noting that a Rule 12(c) motion and a Rule 12(b)(6) motion are analyzed under the same standard). As with a Rule 12(b) motion, courts may consider "matters incorporated by reference or integral to the claim, items subject to

Page **1** of **9**

judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting the motion into one for summary judgment." Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017) (internal citation and quotation marks omitted).

## Background

The following facts are undisputed.

Plaintiff State Farm Fire and Casualty Company issued a Condominium Unitowners Policy # 25-C8-D171-5 to Defendant Sean Patrick Dougherty with effective dates of December 6, 2019 to December 6, 2020 (Doc. 1 ¶ 29).  That policy was cancelled on June 29, 2020 (Doc. 1 ¶ 30). State Farm issued a second policy, #25-L9-6846-2, that was renewed two times, with an effective date of March 9, 2021 to March 9, 2024.  The policies generally provide for personal liability coverage up to $300,000 and contain identical relevant clauses (Doc. 1 ¶¶ 28, 32). The policies provide:

### SECTION II – LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence, we** will:

1. pay up to **our** limit of liability for the damages for which the **insured** is legally liable.  **We** will not pay for criminal restitution; and

2. provide a defense at **our** expense by counsel of **our** choice.

(Doc. 1-2, pp. 42-43).[1]  The policies further contain exclusions:

### SECTION II – EXCLUSIONS

1. Coverage L . . . do[es] not apply to:

---

[1] Italicized words in the policies are bolded and specifically defined by the policies.

a.      **bodily injury** or **property damage** that:

(1)      was a result of a:
    (a)      willful and malicious; or
    (b)      criminal;
act or omission of the **insured;**
(2)      was intended by the **insured;** or
(3)      would have been expected by the **insured** based on a reasonable person standard.

However, exclusions a.(2) and a.(3) above do not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

Exclusions a.(1), a.(2), and a.(3) above apply to all **bodily injury** or **property damage** even if the:

(1)      **bodily injury** or **property damage** was sustained by a different person, entity, or property than was expected or intended;
(2)      **bodily injury** or **property damage** was of a different kind, quality, or degree than was expected or intended;
(3)      **insured** lacked the mental capacity to control his or her conduct;
(4)      **insured** was not charged with or convicted of a criminal act or omission; or
(5)      **insured** was impaired by drugs or alcohol;

\* \* \*

n.      **bodily injury** or **property damage** arising out of any actual, alleged, or threatened:

(1)      sexual harassment, sexual molestation, or sexual misconduct;
(2)      physical or mental abuse; or
(3)      corporal punishment;
by the **insured;**

(Doc. 1-2, pp. 44, 46-47). Finally, the policies define the relevant terms bolded above:

**DEFINITIONS**

**We** define the following words and phrases for use throughout this policy.

\* \* \*

3.      **"bodily injury"** means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

**Bodily injury** does not include:

   a.  any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;
   b.  the actual or alleged exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or
   c.  emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

* * *

11.  **"insured"** means:

   a.  **you;**
   b.  **your relatives;** and
   c.  any other person under the age of 21 in the care of a person described above.

Under Section II, **insured** also means:

   d.  the person or organization legally responsible for animals or watercraft to which this policy applies. However, the animal or watercraft must be owned by **you** or a person included in 11.b or 11.c. above. A person or organization using or having custody of these animals or watercraft in the course of a **business,** or without permission of the owner, is not an **insured;** and
   e.  with respect to any vehicle to which this policy applies, any person while engaged in **your** employment or the employment of a person included in 11.b or 11.c. above.

* * *

16.  **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage.**

(Doc. 1-2, pp. 20-21, 23).  In addition, a Missouri endorsement defines the following:

**"occurrence",** when used in Section II of this policy, means an accident,[2] including accidental exposure to conditions, which first results in:

   a.  **bodily injury;** or
   b.  **property damage;**

---

[2] The term "accident" is not defined in the policies.

during the policy period. All **bodily injury** and **property damage** resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one **occurrence.**

(Doc. 1-2, p. 9).[3]

On October 18, 2024, Defendant Amber Davis filed a complaint in state court alleging "romance fraud" against Dougherty spanning from 2015 to 2023 that cost her over $300,000 in damages (Doc. 1-1).  Davis alleges that, during the course of their relationship, Dougherty used violence, threats of violence (both to himself and others), and coercion to get Davis to pay for his college tuition, his living expenses, utilities, taxes, legal expenses, and other expenses.  Davis pleads the following counts: money had and received (Count I), fraudulent misrepresentation (Count II), assault and battery (Counts III-X), and negligent infliction of emotional distress (Count XI).

In Count I, Davis alleges that Dougherty obtained possession of her money, that he used that money for his own benefit "under unjust circumstances" and that, alternatively, he was unjustly enriched by those funds (Doc. 1-1, p. 18).  In Count II, Davis alleges that Dougherty falsely told her that he would not take money from her accounts without her permission, that such a representation was material to her allowing him access to her accounts, that she did not know the falsity of those statements, that she reasonably relied on those statements, and that she lost significant amounts of money as a result (Doc. 1-1, pp. 18-19).  In Counts III to X, Davis recalls multiple instances of violence from December, 2018 to January, 2023 wherein she alleges that Dougherty threw items at her, shoved her, pushed her, wielded a gun at her, pushed her down to the ground, grabbed her head, shook her, screamed at her, slammed a door on her hand, and threw

---

[3] In their answers, Davis and Dougherty indicate that they are without sufficient information to deny or admit the allegations in the complaint setting forth the terms of the insurance policies (Docs. 29 and 31).  While both Defendants assert affirmative defenses, neither has argued how any affirmative defense would preclude judgment on the pleadings and there is no indication that any affirmative defense would raise an issue of fact.

her up against a wall (Doc. 1-1, pp. 20-21). These acts allegedly resulted in serious injury, emotional distress, and lost wages. For Count XI, Davis alleges that Dougherty issued threats, screamed at her, described violent incidents to her that he had with others, disrupted her sleep, threatened to kill himself, threatened to kill Davis' mother, shared violent fantasies with her, berated her, emotionally abused her, and engaged in other similar, noxious behavior (Doc. 1-1, pp. 23-25).

Dougherty tendered the state court complaint to State Fram for defense and indemnification. State Farm, after initially denying coverage, undertook Dougherty's defense under a reservation of rights. State Farm now seeks a declaration that the events described by Davis in her state court complaint are not covered by the policies as described above. In particular, State Farm argues that the events described are not occurrences, that they do not represent accidents, and that some events did not result in bodily injury or property damage. State Farm further argues that the claims are subject to policy exclusions because they resulted in intended and expected injury and because they involved physical and/or mental abuse. As indicated above, neither Defendant Dougherty nor Davis have filed a response to the motion for judgment on the pleadings.

**Discussion**

It is undisputed that Missouri law governs this diversity action. Under Missouri law, an insurer has two separate and distinct duties, to defend against a lawsuit for damages as to a covered loss and to indemnify its insured as to that covered loss. Trainwreck West, Inc. v. Burlington Ins. Co., 235 S.W.3d 33, 44 (Mo. Ct. App. 2007). A duty to defend is broader than a duty to indemnify; as such, where there is no duty to defend, there is no duty to indemnify. Id. "The duty to defend is determined by comparing the insurance policy language with facts: (1) alleged in the petition;

(2) the insurer knows at the outset of the case; or (3) that are reasonably apparent to the insurer at the outset of the case." Allen v. Bryers, 512 S.W.3d 17, 31 (Mo. 2016).  To avoid a duty to defend, an insurance company must show that there is no possibility of coverage.  Id.; Piatt v. Indiana Lumbermen's Mutual Ins. Co., 461 S.W.3d 788, 792 (Mo. 2015) ("Unless these facts support some reasonably apparent theory of recovery against the insured that would give rise to coverage, the insurer has no duty to defend.").

The terms of an insurance contract are determined as a matter of law.  Schmitz v. Great American Assur. Co., 337 S.W.3d 700, 705 (Mo. 2011).  Unambiguous insurance contracts are enforced as written.  Scaglione v. Acceptance Indemnity Ins. Co., 74 F.4th 944, 950 (8th Cir. 2023).  Words are given their plain and ordinary meaning and contracts are read as a whole; the Court must not "unreasonably distort" contract language or "exercise inventive powers" in order to create ambiguity.  Todd v. Missouri United School Ins. Council, 223 S.W.3d 156, 162-3 (Mo. 2007).  However, if there is ambiguity, the contract is construed in favor of the insured.  Id. at 160. Ambiguity exists if "there is duplicity, indistinctness, or uncertainty in the meaning of the language of the policy.  Language is ambiguous if it is reasonably open to different constructions."  Burns v. Smith, 303 S.W.3d 505, 509-510 (Mo. 2010); Sachtleben v. Alliant National Title Ins. Co., 687 S.W.3d 624, 629-630 (Mo. 2024).  Neither party argues, nor does the Court find, that the Policy is ambiguous.

The policies at issue cover "bodily injury" or "property damage" caused by an "occurrence."  An occurrence means an accident during the policy period – one "continuous or repeated exposure to the same general conditions is" one occurrence.  However, the policy excludes such injury or damage if it is the result of "willful and malicious" or "criminal" acts or omissions; nor does it cover injury or damage intended or expected by the insured; nor does it

cover injury or damage "arising out of any actual, alleged, or threatened" sexual misconduct or physical or mental abuse.  As in any insurance coverage dispute, an insured must demonstrate that the loss is covered by the insurance policy.  Sloan v Farm Bureau Town and Country Ins. Co. of Missouri, 696 S.W.3d 481, 484 (Mo. Ct. App. 2024); See also Axis Surplus Ins. Co. v. TriStar Companies, LLC, 94 F.4th 767, 769 (8th Cir. 2024).  Thereafter, the insurer must demonstrate that the claim falls within exclusionary clauses which are construed strictly against the drafter, typically the insurance company.  Burns v. Smith, 303 S.W.3d 505, 509-510 (Mo. 2010).

There is no possibility of coverage in this lawsuit.  First, Davis' claims in state court do not allege an occurrence as defined by the policies.  Davis' claims all arise from one "continuous or repeated exposure to the same general conditions," namely Davis' allegedly noxious relationship with Doughtery.  Kansas Fire and Cas. Co. v. Koelling, 729 S.W.2d 251 (Mo. Ct.  App. 1987) (adopting the "cause" approach, as oppose to the "effect" approach, "where an insured's single act is considered the accident from which all claims flow.").  Those claims began, at the very least, when Davis alleges that in June, 2016, Dougherty used "violent rage" (screaming and shoving) to force Davis to drive him around.  As such, the events described in Davis' complaint occurred outside of the policy effective dates and are not covered occurrences.  Second, Davis' claims do not set forth accidents.  While the term is not defined in the policies, "[i]t is well-settled Missouri law that when a liability policy defines occurrence as meaning accident Missouri Courts consider this to mean injury caused by the negligence of the insured."  Stark Liquidation Co. v. Florists' Mut. Ins. Co., 243 S.W.3d 385, 393 (Mo. Ct. App. 2007) (quotation marks and citation omitted). Davis alleges intentional conduct in her complaint (except as to Count XI) and not conduct that could be characterized as accidental or negligent.  As to Count XI, alleging negligent infliction of emotional distress, a number of the allegations do not assert bodily injury as defined by the

policies; and, the remaining allegations do not represent allegedly negligent behavior. Accordingly, there is no reasonably apparent cause of action alleged by Davis that could lead to coverage under the policies.

The conduct complained of by Davis are also subject to exclusions under the policy.  First, the policies exclude intentional acts, which is the majority of the claims asserted by Davis.  See Met. Property and Cas. Ins. Co. v. Ham, 930 S.W.2 5, 6-7 (Mo. Ct. App. 1996).  Second, Davis alleges that Dougherty acted in a willful and malicious manner that may also be criminal in nature.  Third, the policies exclude bodily injury arising from physical or mental abuse – such abuse, as the phrase is commonly understood, is the foundation of the allegations of Davis' complaint.  See Capitol Indem. Corp. v. 1405 Associates, Inc., 340 F.3d 547, 550 (8th Cir. 2003) (applying Missouri law and finding that "arising under" language in a policy is broadly construed).

In light of the plain language of the policies at issue and the allegations contained in Davis' state court complaint, State Farm does not owe a duty to defend or indemnify Dougherty.

### Conclusion

For the foregoing reasons, Plaintiff State Farm Fire & Casualty Company's Motion for Judgment on the Pleadings (Doc. 45) is **GRANTED**.  State Farm owes no duty to defend or indemnify Defendant Doughtery in the underlying state court action filed by Defendant Davis. Judgement to enter.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of June, 2026