**IN THE UNITE STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY COMPANY, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 4:25-CV-00729 |
| | ) | |
| SEAN PATRICK DOUGHERTY, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMBER DAVIS, | ) | |
| | ) | |
| Defendants. | ) | |

# *MEMORANDUM IN SUPPORT OF DEFENDANT SEAN DOUGHERTY'S MOTION FOR RELIEF FROM JUDGMENT UNDER RULE 60(b)*

COMES NOW Defendant Sean Dougherty, by and through undersigned counsel, and respectfully submits this Memorandum in Support of his Motion for Relief from Judgement Under Rule 60(b).

## I. PROCEDURAL BACKGROUND

Defendant Amber Davis filed her original Petition against Defendant Dougherty in the underlying St. Louis County, Missouri case, 23SL-CC02649, on June 26, 2023. At all times, in pleadings, depositions, and communications with opposing counsel, Dougherty has adamantly denied all allegations of abuse, fraud, and wrongdoing of any kind against Amber.

State Farm denied coverage to Dougherty upon review of the tendered Petition. Dougherty proceeded *pro se* for nearly eighteen months in the underlying lawsuit. During that time, discovery went forward including Davis's initial production of documents, production of

two alleged expert reports, and Dougherty and Dr. Adam Sky were deposed. Davis's attorney issued subpoenas for numerous sets of records and noticed up custodian of record depositions, but these did not go forward, and Dougherty is not aware of ever receiving copies of any records Davis may have received without deposition. The topic of a finger injury sustained by Davis in September 2021 was discussed by both alleged medical experts.

Davis filed her Second Amended Petition on October 18, 2024. (Doc. 1-1.) Therein, various changes were made to Davis's original allegations and causes of action. Particularly, Count XI was added for Negligent Infliction of Emotional Distress. Counts III through X were lumped together as 8 instances of "Assault and Battery."

In January 2025, State Farm accepted Dougherty's tender of Davis's Second Amended Petition under a reservation of rights, and Attorney Michael Lach was appointed to defend Dougherty. The discovery process eventually resumed.

State Farm filed this declaratory judgment action on May 19, 2025, seeking a declaration that it owed no duty to defend or indemnify Dougherty in connection with Davis's Second Amended Petition. (Doc. 1). The underlying matter was stayed once Dougherty and Davis were served in the Fall of 2025.

Dougherty filed a Motion to Dismiss State Farm's Complaint. (Doc. 14). In that motion, Dougherty argued that State Farm had a duty to defend and was not entitled to declaratory judgment as a matter of law because the facts pleaded by Davis, as well as the actual facts known or that reasonably should have been known to State Farm at the commencement of the case presented potential occurrences falling within policy coverage. Davis had pleaded discrete bodily injury and property damage events during covered policy periods that may satisfy the policy's definition of "occurrence" and not subject to any exclusion. For example, these included alleged

damage to Davis's car over Christmas 2019, alleged damage to Davis's laptop in July 2021, an alleged finger injury in September 2021, and an alleged physical altercation in January 2023. These alleged instances occurred not only months or over a year apart, but they also occurred for different alleged reasons and under different alleged circumstances inconsistent with the "one occurrence" theory argued by State Farm. Dougherty further argued that the September 2021 door/finger injury specifically was accidental, and that State Farm knew or reasonably should have known facts demonstrating as much as they existed from discovery already performed prior to State Farm's participation. However, Dougherty's Motion to Dismiss was denied (Doc. 30).

In her Answer to State Farm's Complaint, Davis asserted an affirmative defense and admission that the September 2021 finger injury and the other discrete alleged injuries falling within the policy periods "could constitute accidents." (Doc. 29, p. 21 ¶ 81.) Dougherty also reiterated in his own affirmative defenses that there was a duty to defend because various discrete incidents alleged during the policy periods occurred months and years apart, in different locations, and for very different reasons and causes, therefore they could not be construed as part of an ongoing single occurrence. Further, he asserted they could possibly fall within the definition of an "occurrence" in the policy, it was not proven they fell under exclusions, and the "physical or mental abuse exclusion" was vague. (Doc. 31.)

The parties proceeded with a scheduling order and initial production during the Spring of 2026. Mediation was ordered in late May and then extended into June upon request of the parties due to scheduling difficulties. As discussed further below, Dougherty was engaged in discovery disputes with Defendant Davis and was also engaged with State Farm trying to coordinate an agreed-upon mediator around late April and early May. Dougherty was also in communication

with counsel for State Farm in both this and the underlying State court matter to address his urgent concern at that time of how he was going to pay the expensive mediation fees.

In the midst of these stressors, on May 4, 2026, State Farm moved for judgment on the pleadings under Rule 12(c). (Doc. 45.)

Unfortunately, Dougherty did not realize he had received a notice of filing email. By that time, Dougherty had also asked undersigned counsel for her informal assistance with sorting his discovery needs. Counsel had signed up for e-notices to be copied to her, but review of her email showed she never received a copy of the filing notice email. As a result, Dougherty did not realize there was a Motion for Judgment on the Pleadings pending at all, and he did not file any response. Defendant Davis also did not file a response. Dougherty has no knowledge of why Davis did not respond.

On June 1, 2026, the Court granted State Farm's Rule 12(c) motion. The Court held that the underlying action alleged no covered occurrence, that the alleged conduct was not accidental, and that the intentional act and physical-or-mental-abuse exclusions barred coverage.

## II. BASIS FOR RELIEF UNDER RULE 60(b)(6)

Rule 60(b)(1) permits relief from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." The Supreme Court has held that the term "mistake" in Rule 60(b)(1) includes a judge's error of law. *Kemp v. United States*, 596 U.S. 528, 534-35, 142 S.Ct. 1856, 1865 (2022). A Rule 60(b)(1) motion based on legal error must be made within a reasonable time and no more than one year after the judgment. Fed. R. Civ. P. 60(c)(1). Defendant respectfully submits that the Court's determination that there was "no possibility of coverage" resulted from such a mistake because the Court permitted State Farm's overarching characterization of Davis's

lawsuit as a continuous course of "romance fraud" and abuse to determine the coverage question of discrete alleged occurrences without determining whether any individual allegation or alternative factual theory independently presented a possibility of coverage.

### III. MISSOURI'S DUTY-TO-DEFEND LAW

Missouri law imposes a broad duty to defend. The duty to defend is broader than the duty to indemnify and arises when there is a potential or possible liability to pay based on the facts at the outset of the case. *McCormack Baron Mgmt. Servs., Inc. v. American Guar. & Liab. Ins. Co*., 989 S.W.2d 168, 170 (Mo. banc 1999). If there is even an arguable question of coverage, the insurer must defend. *Id*. And, when an underlying action pleads both potentially covered and uncovered theories, the insurer generally must defend if any theory or claim is potentially covered. *Id*.; *Lampert v. State Farm Fire & Cas. Co.,* 85 S.W.3d 90 (Mo. App. E.D. 2002); *Wood v. Safeco Ins. Co. of Am*., 980 S.W.2d 43 (Mo. App. E.D. 1998).

"If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *Columbia Cas. Co. v. HIAR Holding, L.L.C*., 411 S.W.3d 258, 265 n.10 (Mo. banc 2013); *citing McCormack Baron*, at 170-71.

Further, the insurer is not relieved of its duty to defend merely because the plaintiff in the underlying lawsuit pleaded his or her claims inartfully. *Allen v. Cont'l W. Ins. Co*., 436 S.W.3d 548, 552-553 (Mo. banc 2014); *citing Marshall's U.S. Auto Supply v. Md. Cas. Co*., 354 Mo. 455, 189 S.W.2d 529, 530–31 (1945). (stating that the "condition of the pleadings" does not control the duty to defend). The duty to defend is determined by comparing the insurance policy language with facts: "(1) alleged in the petition; (2) the insurer knows at the outset of the case; or (3) that are reasonably apparent to the insurer at the outset of the case." *Allen*, at 553.

"[E]ven if the plaintiff bringing a claim against the insured initially pleads the 'wrong' cause of action, or one that is likely to be subject to a motion to dismiss, if, at the time the claim is made, facts are known to the insurer or could reasonably be ascertained by the insurer that would potentially put the claim within the scope of the policy, the insurer must defend the insured. *Fostill Lake Builders, LLC v. Tudor Ins. Co*., 338 S.W.3d 336, 347 (Mo. App. W.D. 2011). "To extricate itself from the duty to defend the insured, the insurance company must prove that there *is no possibility* of coverage." *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 79 (Mo. App. W.D. 2005); *Allen v. Bryers*, 512 S.W.3d 17, 31 (Mo. banc 2016). This burden has not been met.

## IV. ARGUMENT

### A. The Court's Reliance on an Overarching Characterization of the Pleadings Resulted in Oversight of a Possible Covered Occurrence: the September 2021 Finger Injury.

The policy language defines an 'occurrence' as an 'accident, including accidental exposure to conditions, that first results in bodily injury or property damage during the policy period.' It further states that 'bodily injury and property damage resulting from one accident, a series of related accidents, or continuous or repeated exposure to the same general conditions is considered one occurrence.'

State Farm argued 1) that all of the alleged bodily injury and property damage constituted "one occurrence" first occurring before the first policy period ("a pattern of romance fraud"), 2) any bodily injury occurring during a policy period was pleaded as an intentional tort and therefore excluded as intentional/expected, and 3) any bodily injury during a policy period was excluded because it arose from physical or mental abuse. (Doc. 45.)

The Court adopted State Farm's global characterizations, holding that the entirety of Davis's Second Amended Petition described one continuous or repeated exposure to the same general condition, namely the allegedly noxious relationship, and therefore first resulted in injury before any State Farm policy period. Further, the Court summarily found that, aside from Count XI alleging negligent infliction of emotional distress, "the remaining allegations did not represent allegedly negligent behavior." The Court additionally found that policy exclusions applied, as Davis alleged Dougherty "acted in a willful and malicious manner that may also be criminal," and that allegations of "abuse, as the phrase is commonly understood, is the foundation of Davis's complaint."

These broad conclusions overlook details of the Second Amended Petition. Specific, separate incidents in Counts III through X occurring months or years apart are alleged. There is no dispute that some of these incidents allegedly occurred within State Farm's policy periods. Incidents allegedly occurred for different reasons, in different locations, with different alleged mechanisms of injury/damage. Their inconsistency contradicts the "one occurrence" theory.

Taking Davis's highly disputed allegations as true for purposes of this motion, an injury *could* still have occurred entirely by accident that did not arise out of any alleged "pattern of romance fraud" or abuse. The characterization of the relationship does not prove that every alleged event in the parties' seven-year relationship can be lumped into one continuous or repeated exposure to that pattern. The broad brush of the Court's findings, in adopting State Farm's positions, has resulted in a mistake of law. It is not necessary for Davis to have pleaded allegedly negligent behavior (outside of Count XI) to show a possible covered occurrence. If there is even an arguable question of coverage, the insurer must defend. *McCormack Baron Mgmt. Servs., Inc. v. American Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999).

State Farm argued that Counts III through X were necessarily excluded under the policy because they were pleaded as intentional torts. No further analysis was performed to confirm this conclusion. (Doc. 46, pp. 9-10.) However, if a separate analysis had been performed, it should have been found that State Farm did not satisfy its burden on the pleadings to prove there was no possibility of coverage. The September 2021 finger injury, presumably Count IX, allegedly occurred during the March 9, 2021 to March 9, 2024 policy period. Based upon the pleadings, there is a possibility that incident was accidental and that it constitutes an occurrence not barred by any policy exclusion.

The mistake of law is therefore not that the Court did not expressly discuss every factual allegation in Davis's petition. Rather, Dougherty respectfully submits that the Court's categorical treatment of the allegations resulted in the elimination of a possible covered occurrence as pleaded, and one also previously brought to the Court's attention during the defendants' initial responsive pleadings.

**B. The September 2021 Finger Injury Allegations Create a Possibility for Coverage That Should Not Have Been Resolved Against the Insured on the Pleadings.**

**a. The Allegations Do Not Prove Dougherty Intended to Injure Davis**

The overarching allegation of Davis's claims for assault and battery was that Dougherty "intended to cause harmful or offensive conduct or apprehension thereof…" (Doc. 1-1, p. 19, ¶88). The September 2021 finger injury was initially pleaded as follows: "In September of '21, Dougherty engaged another realtor to make an offer on the 1.45 million dollar property he so fervently desired. When Davis refused and tried to leave Dougherty's condo, Defendant Dougherty attempted to prevent Plaintiff from leaving by first standing in front of the door. When he allowed her to leave, Dougherty slammed the door on her fingers, leaving Davis'

fingertips on the other side of the door. Dougherty then locked the deadbolt. The flesh was torn open, exposing tendons and underlying bone. One of the injured fingers was fractured." (Doc. 1-1, p. 13, ¶57.) This allegation was repeated at ¶88g without reference to any disagreement about buying property. Davis thereafter contradicted her "intent" language of ¶88 by pleading that the described "assaults and/or batteries" were "intended to harm" Davis, without defining the term "harm." (Doc. 1-1, ¶89).

Missouri law demonstrates that when considering "intent" within an exclusionary clause in an insurance policy, intentional conduct and intentional injury are not interchangeable concepts. There is a distinct difference between intended acts and intended results…. That [an insured's] acts were intended did not exclude the unintended result from coverage under the policy in suit. *White v. Smith*, 440 S.W.2d 497, 507 (Mo.App.1969). "It must be shown not only that the insured intended the acts causing the injury, but that injury was intended or expected from these acts." *American Family Mut. Ins. v. Pacchetti*, 808 S.W.2d 369, 371 (Mo. banc 1991).

Since *White v. Smith*, Missouri cases have continued to reinforce the distinction between an intended act and an intended injury, finding that only the latter will allow an insurer to avoid coverage of its insured. For example:

When a man burned his own field, the smoke obstructed a neighboring roadway, and a car accident occurred. State Farm denied coverage because the insured intentionally set the fire. In affirming the finding of coverage, the appellate court held that "the term 'caused by accident,' as used in policies of liability insurance, is satisfied where the insured did not intend the car accident damage result from his act of setting the fire, although the act itself was intentional and did so result. *Fidelity and Cas. Co. of New York v. Wrather*, 652 S.W.2d 245, 248 (Mo. App. 1983).

A man fired a gun out of a moving truck, injuring a woman. There was no showing that injury to anyone was intended or expected, and the insurer was liable. *Steelman v. Holford*, 765 S.W.2d 372 (Mo.App.1989), It must be shown not only that the insured intended the acts causing the injury, but that injury was intended or expected from these acts. *Id*., at 377. This case has been referenced as an example of reckless behavior, which the Missouri Supreme Court still distinguishes as insufficient to necessarily compel a finding of intent or expectation. "We also reject the suggestion that a showing that the insured acted recklessly compels a finding that injury was expected. Although recklessness is sometimes the legal equivalent of intention, liability insurance would be of scant value if coverage were to turn on a jury's finding that the insured acted recklessly rather than negligently." *Pacchetti*, 808 S.W.2d at 371 (Mo. banc 1991).

A man who provided security footage of a husband's bad behavior to the wife during divorce proceedings did not intend to cause damage to the husband that resulted therefrom, and State Farm was therefore liable to provide coverage. *Newell v. State Farm Fire & Cas. Co.*, 901 S.W.2d 133 (Mo. App. W.D. 1995);

The Eighth Circuit held an insurer had a duty to defend an insured when he intentionally fired an employee but did not expect or intend that the act of termination would cause the physical and emotional damage the employee suffered as a result. *Interco Inc. v. Mission Ins. Co*., 808 F.2d 682, 686 (8th Cir.1987) (Applying Missouri law).

A declaratory judgment was brought by an insurer when a 16-year old boy suffered a fatal overdose from cocaine supplied and possibly injected by the insured. *Pacchetti*, 808 S.W.2d 369. The insurer argued that cocaine was known to be harmful, and the injury was excluded under their "intended or expected" policy exclusion. However, the trial court found coverage in the insured's favor, holding that the evidence was insufficient to prove the insured had any intent

or expectation for harm. The trial court also held that it, "cannot say as a matter of law that because cocaine caused the harm to [victim], intent to harm can be inferred or established from the instrumentality itself." *Id.*, at 370. The Missouri Supreme Court upheld the trial court, holding that what the insured intended or expected was a question of fact. *Id.*, at 371-72.

Each of these described cases share a commonality that the intentional acts by the insureds did not come with zero foreseeable injuries to others. Starting a fire, shooting a gun, providing drugs, firing an employee, or providing security footage of offensive activity were all activities that carried a possibility of harm to another person. However, they are all insufficient, under what is now known as the *Pacchetti* standard, to prove the insured acted with the requisite intent to cause injury.

The September 2021 finger injury alleged by Davis falls squarely within the *Pacchetti* standard, and even moreso than cases involving reckless behavior. Unlike the instrumentalities considered in some cases above, a door ordinarily performs the benign function of separating physical spaces. Whether intentionally closing it creates an expectation of bodily injury necessarily depends upon facts the pleadings here leave unanswered—including whether Dougherty knew any part of Davis's body remained within its path. The mere occurrence of an injury does not prove Dougherty intended or expected an injury to occur.

State Farm argued that the finger injury, while lumping it together with Davis's other counts for "assault and battery," was necessarily excluded under policy exclusions by virtue of its label and pleading as an intentional tort and the vague allegation of intended "harm." (Doc. 46, pp. 9-10.) However, the burden is on the insurer to establish that an exclusion bars coverage, and State Farm failed to do so here. *Pacchetti*, at 371.

The allegations regarding the September 2021 finger injury are vague. Aside from being labeled "assault and battery," it is unclear what "conduct" by Dougherty was an assault, what was a battery, i.e. what involved the intent to cause harmful "conduct," what involved intent to cause offensive "conduct," what involved the intent to cause apprehension, and what may have been unintended. (See Doc. 1, ¶88.) The further allegation that Dougherty "intended to harm" (Doc. 1, ¶89) provides no clarity on the questions of what conduct within the description of the whole event was intended to be harmful or what kind of harm was allegedly intended. The description of the whole finger injury event, as pleaded, is insufficient to determine the context of what was happening between the couple at the time, or Dougherty's intentions at any point therein.

Although Dougherty disputes Davis's alleged account of this injury, taking it as true, Davis's allegations may describe actual or alleged intentional conduct by Dougherty: that Dougherty first [intentionally] stood in front of the door to prevent Davis from leaving (for an unknown amount of time), that Dougherty then [intentionally] allowed her to leave, that he [intentionally] slammed the door, and he [intentionally] locked it. However, did Dougherty intentionally injure Davis? Did he intend for the door to make contact with her person at all? The allegations are at least consistent with Davis having substantially or completely crossed the threshold before the door closed because no other portion of her body is alleged to have been struck.

Davis provided no explanation for why her hand was lingering in a doorway that she was freely exiting when she was not even pulling the door shut herself. It is not pleaded that Dougherty intended, knew, or expected Davis would have her fingers on or near the edge of the doorway when the door shut. Davis also did not plead that Dougherty was aware of her injury

prior to allegedly locking the deadbolt. Those omissions are material. They leave open significant possibilities that Dougherty's intentions extended no further than closing a door behind a departing person regardless of how forcefully the door was allegedly shut.

Dougherty could have "slammed" the door behind Davis as she departed, intending to terminate their encounter and physically separate himself from Davis, without knowing that her fingers remained within the path of the closing door. In fact, Dougherty asserts a reasonable person would be most likely to not expect someone's fingers to be in a doorway if that person is leaving. Under that reasonable possible construction, the intention of Dougherty's act was separation, not physical contact. With that said, it is even most likely that Dougherty had no intention or expectation that the door would cause injury, and that the injury came as a shock to both him and Davis. At minimum, the pleadings present substantial questions of fact as to Dougherty's intent and the possibility of a bodily injury that occurred by accident. *Pacchetti*.

**b. The Allegations Do Not Prove a Policy Exclusion Applies.**

It flows further that the finger injury allegations do not prove the applicability of State Farm's other potential policy exclusions. The pleadings provide possibilities that Dougherty intended to allow Davis to leave and did not intend for any injury among the numerous possibilities discussed above. Thus it is not proven on the pleadings that the injury: was a result of an (a) willful and malicious; or (b) criminal; act or omission of the insured; or that the injury would have been expected by the insured based on a reasonable person standard. In fact, based upon the pleadings, a reasonable person most likely would have expected that Davis would fully exit the room rather than leave her fingertips lingering on or near the edge of the doorway.

Finally, State Farm did not prove that the September 2021 finger injury arose out of actual, alleged, or threatened physical or mental abuse. Although Missouri construes "arising out

of" broadly, the phrase still requires a causal relationship between the injury and the excluded conduct. *Capitol Indem. Corp. v. 1405 Assocs., Inc.*, 340 F.3d 547, 550 (8th Cir. 2003). It was not enough to establish merely that the injury occurred temporally within a relationship Davis has characterized as abusive. In this alleged incident, the door was allegedly slammed as Davis left on her own volition and under her own power. She wanted to leave. Dougherty "allowed" her to leave. She was not forced out. The door was not slammed in her face like in the case of someone trying to enter. The pleadings simply do not show that the act of "slamming" the door was abusive or that the injury to her fingers otherwise arose out of actual, alleged, or threatened physical or mental abuse at any time during the pleaded incident.

Most importantly, Dougherty need not establish at the duty-to-defend stage exactly what will be proven at trial as to Davis's fingers. State Farm cannot establish the applicability of any exclusion as a matter of law merely by characterizing the parties' broader relationship as abusive. State Farm bore the burden of establishing that there was *no possibility of coverage* throughout the entirety of Davis's claims. Here, the pleadings permit the reasonable inference that the September 2021 finger injury was a covered "occurrence" giving rise to the duty to defend Dougherty because it resulted by accident and was not intentional, malicious, criminal, or expected, and did not arise from any actual, alleged, or threatened physical or mental abuse.

WHEREFORE, Defendant Dougherty respectfully requests that the Court vacate or set aside the June 1, 2026 Judgment and Memorandum and Order, deny State Farm's Motion for Judgment on the Pleadings, reinstate this action, and grant such further relief as this Honorable Court deems just and proper.

**C. Alternatively, the Exceptional Circumstances Facing Dougherty Warrant Relief Under Rule 60(b)(6).**

The Affidavit of Defendant Sean Dougherty is attached hereto in support of his Motion for Relief for extraordinary circumstances.

Rule 60(b)(6) provides equitable relief in extraordinary circumstances. *Buck v. Davis*, 580 U.S. 100, 123–24, 137 S. Ct. 759, 7778, 197 L.Ed.2d 1 (2017). In determining whether such circumstances exist, a court may consider a "wide range of factors," including "the risk of injustice to the parties." *Id.* at 123 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988)). The 8th Circuit similarly recognizes that Rule 60(b) is "grounded in equity" and exists to prevent a judgment from becoming a "vehicle of injustice." *Harley v. Zoesch*, 413 F.3d 866, 870 (8th Cir. 2005). Relief under subsection (b)(6) may be appropriate where exceptional circumstances have denied the movant a full and fair opportunity to litigate and prevented adequate redress. *Id.* at 871. The relevant circumstances should be considered collectively rather than in isolation. See *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1154–55 (8th Cir. 2013).

Dougherty invokes subsection (b)(6) based upon equitable circumstances. Regarding the September 2021 finger injury, Dougherty states under oath that the injury occurred entirely by accident. The parties were not arguing; Dougherty entered his condominium carrying items and, unaware that Davis was immediately behind him, used his body to close the door because his hands were full and he needed to prevent his cat from escaping. He did not see Davis place her hand in the doorway. When the door contacted her fingers, Dougherty immediately assisted Davis, transported her first to Total Access Urgent Care and then to Mercy Hospital, and personally heard Davis describe the accidental mechanism of injury to her treating providers exactly as the accident really happened. Dougherty Aff. ¶ 8.

As set forth in his Affidavit, Dougherty defended the underlying action *pro se* for approximately eighteen months before State Farm undertook his defense. Dougherty was unable to obtain the contemporaneous treatment records that he firmly expects to corroborate this account. Davis's retained experts reviewed the Mercy Hospital records, and one expert testified concerning those records during his deposition. For the brief period Dougherty was represented by counsel, the treatment records were withheld from Davis's formal production. Still, the underlying records themselves have never been provided to him despite his repeated efforts. Id. ¶¶ 12–25.

Importantly, the underlying state action was stayed during the pendency of this declaratory judgment action. Dougherty therefore could not simply continue discovery in the underlying action to obtain the missing evidence. Instead, acting *pro se* in this action, he pursued the records here. After multiple initial and informal efforts proved unsuccessful, Dougherty was notified that, incredibly, Davis did not possess the finger injury treatment records at all. Id. ¶¶ 24-25. He submitted subpoenas for the Mercy Hospital and Total Access Urgent Care records to this Court on May 14, 2026. Id. ¶¶ 27–29. The subpoenas had not been signed yet by the Clerk when the Court entered judgment on June 1, 2026. Id. ¶ 29.

Dougherty asks the Court to consider the circumstances collectively. Doughtery has been unrepresented for the majority of the time since Davis filed her first Petition. After 3 years, Dougherty has only now, herein, had the opportunity to provide his sworn, highly detailed account of the September 2021 finger incident: a completely accidental injury. Throughout litigation, Dougherty has continuously tried and been prevented from obtaining the evidence during requests with and between attorneys, and by action of the law and courts through the stayed case, scheduling orders, the lengthy process of obtaining the Clerk's signature on

subpoenas issued by a *pro se* litigant, and the sudden approval of a 12(c) motion in the midst of discovery and mediation planning. Dougherty had reached the point of submitting third-party subpoenas in this action only seventeen days before the Judgment was entered.

The consequence of this Court's Judgment compounds the prejudice. It terminated State Farm's obligation to provide a defense in the still-pending underlying action as well as terminated coverage for any potential judgement. Dougherty therefore faces resumption of substantial state court litigation without insurer-appointed counsel while the long sought-after evidence concerning a potentially covered occurrence remains undeveloped. If those records corroborate Dougherty's sworn account as expected, the prejudice caused by losing his defense during the intervening state court proceedings cannot readily be remedied afterward.

These circumstances present more than the ordinary hardship accompanying an adverse judgment. They implicate the equitable concern identified by the 8th Circuit in *Harley*: whether exceptional circumstances deprived the movant of a full and fair opportunity to develop his position and left him without adequate redress. 413 F.3d at 871. Considering the circumstances as a whole, including the risk of substantial and potentially irreparable prejudice in the underlying action, Defendant respectfully submits that Rule 60(b)(6) provides an alternative basis for relief from the judgment.

WHEREFORE, Defendant Dougherty respectfully requests that the Court vacate or set aside the June 1, 2026 Judgment and Memorandum and Order, deny State Farm's Motion for Judgment on the Pleadings, reinstate this action, and grant such further relief as this Honorable Court deems just and proper.

Respectfully submitted,

**LAW OFFICE OF KIMBERLY COTSWORTH**

/s/ Kimberly Cotsworth

Ms. Kimberly Cotsworth, 62817MO
36 Millwell Drive
St. Louis, MO 63043
Kimberly@Cotsworthlaw.com
314-435-0262
*Attorney for Defendant Sean Dougherty*

**PROOF OF SERVICE**

I certify that on September 4, 2026, I filed the foregoing with the Clerk of Court and served all counsel of record through the Court's CM/ECF system or by other authorized means.

/s/ Kimberly Cotsworth

Kimberly Cotsworth